ISI INTERNATIONAL, INC.,
Plaintiff–Appellant,

v.

BORDEN LADNER GERVAIS LLP,
successor to Scott & Aylen,
Defendant–Appellee.

No. 99–1815.

United States Court of Appeals,
Seventh Circuit.

Argued May 18, 2001.

Decided July 2, 2001.

David A. Crossman (argued), Chicago, IL, for Plaintiff-Appellant.

Jeffrey P. DeJong (argued), Altheimer & Gray, Chicago, IL, for Defendant-Appellee.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Bert Reitsma, a physician living in Ontario, invented a device for draining surgical wounds. He asked Yves Menard, a solicitor at Scott & Aylen (based in Ottawa) to incorporate a firm to exploit this invention. (Scott & Aylen and several other partnerships merged into Borden Ladner Gervais LLP after this suit began; for clarity we retain the "S&A" acronym.) Reitsma also engaged Max Wood, one of S&A's patent agents, to obtain patents for the invention. Wood hired a law firm based in Grand Rapids, Michigan, to prosecute a patent application in the United States. In 1995 Reitsma licensed the worldwide rights to make and sell the invention to ISI Surgical Instruments Canada, Ltd., an Ontario corporation, under a license specifying that disputes would be resolved by Ontario courts under Ontario law. The license did not transfer ownership of the patent applications. The next year ISI International, Inc., an Illinois corporation, acquired all of the shares in ISI Ontario, whose rights under the agreement with Reitsma soon were assigned to ISI International. Reitsma later attempted to end the license. Menard sent letters to ISI International's customers around the world, telling them on behalf of Reitsma that ISI International no longer had any rights in the invention and that to avoid liability for "damages suffered by our client as a result of [your] infringement of [his] patent" they must "cease and desist from dealing in any way with the said product except at the request of our client." This letter twice stated that Reitsma holds a patent on the device, yet S&A well knew that Reitsma had none. (He never received one, either; in September 1997 S&A arranged at Reitsma's request for the abandonment of all pending applications.) One of these letters went to American Pharmaceutical Partners in California, which dropped ISI International like a hot potato. So did everyone else. Today its principal assets are lawsuits.

One of these, a counterclaim against Reitsma in litigation (No. 97 C 3827) that had been commenced by a recipient of S&A's cease-and-desist letter, led to a judgment in ISI International's favor for almost $290 million plus a declaration that the attempted license cancellation was ineffectual. Reitsma defaulted, but damages still had to be established. After the prove-up Judge Leinenweber wrote a 17–page opinion with extensive findings of fact. The court found that, by striking an agreement with Jokari/US, Inc., for use of a complementary product, Reitsma had disabled himself from unilaterally termi-

nating the license. (Jokari, which has headquarters in Texas, became an investor in ISI International.) The judge also concluded that "shortly after the formation of ISI [International], Reitsma, using his position of trust and authority as an officer and director of ISI [International], embarked on a pattern of intentional criminal conduct to fraudulently convert and embezzle funds from ISI [International] for his personal use." The court found that Reitsma's dealings (through S&A) with the U.S. Patent and Trademark Office, and with ISI International's potential customers, were part of his scheme to defraud. Reitsma did not appeal, but neither did he comply.

The suit now before us is ISI International's second principal asset. It is against S&A, which appears to be more solvent than Reitsma and certainly is more responsible; it has appeared and litigated in a civilized fashion. Although ISI International's complaint is windy and contains far too many "counts" (as if it were an indictment and each conviction on a separate count authorized additional punishment), it makes only two fundamental claims for relief. One is that S&A violated state and federal law by sending false and misleading letters to ISI International's business partners, causing them to cease dealing with ISI International. We call this the fraud claim. The principal state-law theory depends on the tort of intentional interference with contract (or with prospective economic advantage, for those potential customers that had not yet signed contracts); the federal-law theory depends on § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), which forbids making false or deceptive statements in connection with commercial activities in interstate commerce. ISI International's second claim is that S&A committed malpractice and breached fiduciary duties that it owed to ISI International or its subsidiary ISI Ontario. This claim (which we call the fiduciary claim) depends on establishing that S&A served as counsel to one or both of the firms, as opposed to Reitsma personally.

■ What S&A wants—and what the district court gave it—is the opportunity to litigate these claims in Canada rather than the United States. Observing that neither Menard nor Wood performed any of the questioned acts in Illinois, S&A contended that the courts of that state lack personal jurisdiction over it. Because Fed.R.Civ.P. 4(k)(1)(A) links personal jurisdiction in federal cases to the jurisdiction of the state courts, if the state courts may not exercise jurisdiction then neither may the federal courts, on S&A's view, unless a federal statute authorizes nationwide (or worldwide) service of process—which the Lanham Act does not. The district court agreed with this submission, held that S&A lacks "minimum contacts" with the State of Illinois, and added that Illinois would not in any event exercise jurisdiction even if the Constitution permitted it. Illinois employs the fiduciary-shield doctrine, see *Rollins v. Ellwood*, 141 Ill.2d 244, 278, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1314 (1990), under which a person who enters the state solely as fiduciary for another may not be sued in Illinois. S&A acted only as a fiduciary for Reitsma, the district court concluded, and therefore may not be sued in Illinois. (This conclusion effectively rejected the fiduciary claim on the merits, for if S&A never represented ISI International or ISI Ontario it had no fiduciary duties to them.) The district court added that even if Illinois could exercise personal jurisdiction over S&A, the suit still would be dismissed on the ground of *forum non conveniens*. Ottawa is a

superior location for this litigation, the judge wrote.

■ The premise of the district court's opinion, and of the parties' appellate briefs, is that if the state courts in Illinois would not exercise personal jurisdiction over S&A, then federal courts may not do so. That premise is false. The due process clause protects persons from being haled into a court unless they have "minimum contacts" with the sovereign that established that court. See *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The jurisdiction whose power federal courts exercise is the United States of America, not the State of Illinois. So far as the Constitution is concerned, the right question is whether S&A has contacts with the United States—as it plainly does. No matter what one makes of the fiduciary claim (which if valid would link S&A to Illinois) or the fact that the letters sent to ISI International's business partners led to financial loss in Illinois (see *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir.1997), a case that the district court did not mention), S&A cannot dodge the fact that it sent to California (using the United States Postal Service) a letter that had economic consequences in the United States. It engaged a law firm in Michigan; at S&A's instructions this firm first filed, and then abandoned, a patent application at the United States Patent and Trademark Office. Judge Leinenweber found that these acts caused multi-million-dollar losses in the United States. They expose S&A to the jurisdiction of the United States of America, which may exact sanctions if S&A's conduct violated the law. The threshold question thus is whether the federal court in Illinois has been authorized to exert the full power of the nation. Some federal statutes do this, and do so constitutionally. See, e.g., *Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035–36 (7th Cir.2000) (collecting cases). The Lanham Act does not. But Fed.R.Civ.P. 4(k)(2) adds that in such situations:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

This provision, added in 1993, responds to the Supreme Court's suggestion that the rules be extended to cover persons who do not reside in the United States, and have ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction. See *Omni Capital International v. Rudolf Wolff & Co.*, 484 U.S. 97, 111, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). See also Charles Alan Wright & Arthur R. Miller, 4A *Federal Practice and Procedure* § 1124 (2000 pocket part). Thus if as S&A insists (and the district court held) S&A is not subject to the jurisdiction of state courts in Illinois, and *also* is "not subject to the jurisdiction of the courts of general jurisdiction of any state", then this suit may proceed, for jurisdiction in federal court is "consistent with" the Constitution and the Lanham Act.

■ Although the parties did not alert the district judge to Rule 4(k)(2), and ISI International did not rely on that rule in its appellate brief, it is best to excuse the forfeiture. Federal courts are entitled to apply the right body of law, whether the parties name it or not. See *Kamen v.*

*Kemper Financial Services, Inc.*, 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991); *United States National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439, 445–48, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993). What is more, federal courts are supposed to do what they can to avoid making constitutional decisions, and strive doubly to avoid making unnecessary constitutional decisions. S&A wants us to make a constitutional decision about the limits the due process clause of the fourteenth amendment imposes on state courts, and—if we follow *Janmark* and hold that the Constitution would allow Illinois to entertain the suit—to rule that the Constitution of Illinois independently would preclude personal jurisdiction. Such decisions are hypothetical in federal cases, forced on courts by Rule 4(k)(1)(A) because it limits jurisdiction to what state courts would exercise. But the constitutional excursion can be avoided by using Rule 4(k)(2), which recognizes the greater powers of the United States as a whole.

■ Now one might read Rule 4(k)(2) to make matters worse by requiring 51 constitutional decisions: The court must first determine that the United States has power and then ensure that none of the 50 states does so. The constitutional analysis at the federal level is unavoidable but usually simple (as in this case). Constitutional analysis for each of the 50 states is eminently avoidable by allocating burdens sensibly. A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there (personal jurisdiction, unlike federal subject-matter jurisdiction, is waivable). If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).

See *Central States Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir.2000). See also *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 40–42 (1st Cir.1999). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit. (Employing Rule 4(k)(2) *also* enables us to avoid the questions whether S&A really was ISI International's lawyer and whether the fiduciary-shield doctrine used by Illinois applies to organizations, such as partnerships, or only to natural persons.)

■ ISI International did not rely on Rule 4(k)(2), but S&A's appellate lawyer was ready for the questions asked during the oral argument. When the court inquired whether S&A would be subject to personal jurisdiction in any other state (California, for example), counsel was noncommittal. More discovery would be needed, counsel suggested. But S&A does not need discovery to learn *its own acts*. Nor is it apparent how more facts could contribute to resolution of the question. S&A had it within its power to knock out Rule 4(k)(2) by agreeing that it is subject to personal jurisdiction in some other state. It proved unwilling to do so. We therefore conclude that under Rule 4(k)(2) jurisdiction is proper in the United States District Court for the Northern District of Illinois.

■ The fiduciary-shield doctrine, as a creation of state law regulating the limits of process in their own courts, does not apply when jurisdiction rests on Rule 4(k)(2). Federal courts could create the doctrine as a matter of federal common law, but it would be unsound to do this. So S&A's able appellate lawyer conceded, and we think the concession prudent. Applied at the state level, the fiduciary-shield doctrine is a venue rule. It requires suit against a fiduciary to proceed in the fiduciary's home state. See *Hardin Roller*

*Corp. v. Universal Printing Machinery, Inc.*, 236 F.3d 839 (7th Cir.2001); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*, 750 F.Supp. 330 (N.D.Ill.1990). State courts transfer venue to other states by dismissing the suit, which induces the plaintiff to file elsewhere. Federal courts, by contrast, transfer venue to district courts in other states expressly, using 28 U.S.C. § 1404(a). When jurisdiction is based on Rule 4(k)(2), however, it is impossible (by definition) to send the litigation to another state. Even if (as we doubt) it would be within judicial authority to displace § 1404(a) in this manner, the fiduciary-shield doctrine would remain a misfit. The only option would be to declare that no federal court in the United States could exercise jurisdiction, a step that would be at odds with Rule 4(k)(2). So we hold that, when personal jurisdiction rests on Rule 4(k)(2), there is no fiduciary-shield doctrine. Its legitimate function is served by the doctrine of *forum non conveniens*, to which we turn.

The district court's discussion of this doctrine was cursory. The judge stated that S&A is amenable to suit in Ontario and added that because Ontario is "where the business transactions underlying the suit occurred, the action is more properly prosecuted in an Ontario court." Although the district judge cited *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the leading authorities on *forum non conveniens* in federal litigation, she did not employ the analysis required by those cases. Both *Gulf Oil* and *Piper Aircraft* state that there is a strong preference for conducting the litigation in the plaintiff's chosen forum, and that only rare circumstances make honoring this choice inequitable. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839. The only consideration articulated by the district court— that "the business transactions underlying the suit occurred" in Ontario, not only is not particularly compelling on the equitable scale but also is not true. Although S&A's acts were accomplished in Ontario, the "business transactions" are worldwide: ISI International of Illinois acquired ISI Ontario, took an assignment from a Dutch physician living in Ottawa who had a patent firm from Michigan working on the case, made a deal with a Texas corporation (Jokari) for cooperative production, and was negotiating to license worldwide. The tripartite Jokari–Reitsma–ISI Ontario agreement that ISI International acquired was signed in Texas and contains a Texas choice-of-law clause. The solicitors from Ontario sent letters to California (and some foreign nations) concerning these transactions. It may be that Ottawa remains the most sensible place to litigate, but we are not confident that the district judge has thought this through. Her invocation of *forum non conveniens* appears to be an afterthought in an order dominated by attention to personal jurisdiction.

■ Certainly many witnesses and documents can be found in Ottawa, though other witnesses and documents are located in California, Illinois, and Texas. The license between Reitsma and ISI Ontario contains forum-selection and choice-of-law clauses that make Ottawa the right place for litigation about the license—but neither the fraud claim nor the fiduciary claim rests on the license. Certainly the Lanham Act claim seems at home in a U.S. court. S&A points out that it has already initiated a declaratory-judgment action in Ottawa concerning its dispute with ISI International, making that a good forum, to which ISI International replies that it has already won $290 million and a declaratory judgment against Reitsma in the Northern District of Illinois, and it wonders why that forum is not suitable for

related claims against S&A. ISI International adds that Ontario Rule of Civil Procedure 36.01 introduces a complication: compulsory process for conducting discovery depends on leave of the judge, while compulsory process in the United States is more mechanical. ISI International is concerned that if the litigation proceeds in Ontario it may not be able to depose witnesses who live in the United States. Perhaps there is an answer to this concern, but it is not a subject that the district court considered. *Forum non conveniens* is a doctrine requiring the sound exercise of equitable discretion, and that discretion belongs to the district judge rather than to us. The best course, therefore, is to remand the case so that, fully cognizant of the competing interests, the district judge may exercise the discretion she possesses.

VACATED AND REMANDED.