**GRADUATE MANAGEMENT
ADMISSION COUNCIL,**
Plaintiff,

v.

**RVR Narasimha RAJU d/b/a
"GMATplus.com,"**
Defendant.

No. CIV.A. 02–581–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 23, 2003.

Joseph Edward Hartman, Fulbright & Jaworski L.L.P., Washington, D.C., for Plaintiff.

## MEMORANDUM OPINION

ELLIS, District Judge.

This copyright and trademark action against a citizen of India grows out of defendant's use of a foreign Internet website with an infringing domain name to sell plaintiff's copyrighted materials throughout the world including the United States. Defendant has defaulted and plaintiff has demonstrated a right to copyright and trademark relief provided there is personal jurisdiction over defendant. Thus, explored and resolved here is the question whether there is personal jurisdiction over a citizen of India who registers and operates a foreign website selling plaintiff's test preparation materials in apparent violation of United States copyright and trademark laws, where (i) the copyright and trademark holder is located in Virginia, (ii) the website contains a purported testimonial from a Virginia citizen, (iii) infringing materials were sold and delivered to two individuals in Virginia, and (iv) the website contains ordering information for United States citizens.

### I.[1]

Plaintiff Graduate Management Admission Council ("GMAC") is a nonprofit Virginia corporation located in McLean, Virginia. GMAC develops and owns all rights to the Graduate Management Admission Test ("GMAT"), which is used to assess the qualifications of applicants to approximately 1700 graduate business management programs in the United States and elsewhere. The GMAT forms and the questions created by GMAC are original, copyrightable materials, and GMAC enjoys exclusive rights to copy, distribute, display, publish, and prepare derivative works. GMAC routinely registers all of its test forms and questions with the Register of Copyrights. In addition, GMAC has registered "GMAT" as a trademark with the United States Patent and Trademark Office.

Defendant Narasimha Raju ("Raju") is a citizen of India. Raju registered the domain names < gmatplus.com> and < gmatplus.net> in April and May of 2000. According to the record, the original registrar for these domain names was wespe.de, located in Germany. The record further reflects that Raju subsequently changed the registrar for < gmatplus.com> to Domain People, Inc., and the registrar for <

---

1. The facts are drawn from the complaint. Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim. *See Anderson v. Foundation for Ad-vancement, Educ. and Employment of American Indians,* 1999 WL 598860 (4th Cir. August 10, 1999); *Bonilla v. Trebol Motors Corp.,* 150 F.3d 77, 80 (1st Cir.1998).

gmatplus.net> first to Enom, Inc., and then to 123Register.com.[2] The registry for both of these domain names, as for all ".com" and ".net" domain names, is Veri-Sign Global Registry Services, located in Herndon, Virginia.

Using these domain names, Raju operates a website under the name of "GMATplus" which sells GMAT questions for test preparation purposes.[3] The site purports to sell, for as much as $199, seven books containing "100% actual questions, which were never published in any GMAT books and material."[4] Significantly, the promotional text on the website claims that 74% of recent test takers scoring above 700 on the GMAT were from India, China, Korea, Japan, and Taiwan, even though only 22% of all test takers come from those five countries. The GMATplus website attributes this disproportionate success to the fact that "most of [these high scorers from these countries] have access to 100 percent of unpublished previous questions in these countries." According to GMAC, Raju sold and delivered infringing materials to individuals located in Virginia on at least two known occasions.[5]

The GMATplus website facilitates the ordering of materials through a two step process, combining a money transfer arranged through a third party with on-line ordering through a provided email address. Potential customers are directed first to contact Western Union or Money-Gram to set up a payment to Narasimha Raju in Hyderabad, India, and then to send an email to "gmatplus@yahoo.com" containing the customer's name, address, and telephone number and the money transfer reference number provided by Western Union or MoneyGram. The provided email address is only to be used for "shipping and payment" purposes, not for general questions about the products. The ordering information appears to facilitate worldwide orders, but places specific emphasis on the United States and Canada. The site provides the toll free numbers for Western Union or MoneyGram to be used "in the U.S. or Canada," while those located "in other countries" are provided hyperlinks to Western Union's and Money-Gram's websites so that they can find the office nearest to them. The site promises delivery to "most parts of the world (including the US) within 3–5 working days." No countries or markets other than the United States and Canada are mentioned by name on the ordering page. Furthermore, of the six testimonials that appear on the website, three are purportedly from the customers in the United States, including one in Virginia, with the other three coming from customers in Singapore, Australia, and France.

On April 24, 2002, GMAC filed a five count complaint against Raju alleging (i) copyright infringement, in violation of 17 U.S.C. § 501(a), (ii) trademark infringe-

---

2. Although the location of these registrars is not specified in the complaint, the public record shows that wespe.de is located in Germany, Domain People, Inc. is located in Canada, Enom, Inc. is located in Washington state, and 123Register.com is located in California.

3. It appears that the GMATplus site is not currently operating at either domain name. Yet, because this fact is not contained in this record, and because the site might reappear at any time, this recitation of facts proceeds, as does the complaint, using the present tense.

4. Because GMAC does not publish most questions used on prior exams, but rather reuses them, Raju's alleged publication of GMAT questions not only violates GMAC's copyrights, it also undermines the integrity of the test.

5. These materials did not contain secure, unpublished questions, but did include material copyrighted by GMAC.

ment, in violation of 15 U.S.C. §§ 1114(1) and 1117(a), (iii) trademark dilution, in violation of 15 U.S.C. § 1125(c), (iv) cyberpiracy, in violation of 15 U.S.C. § 1125(d), and (v) unfair competition in violation of 15 U.S.C. § 1125(a). By Order dated September 9, 2002, it was noted that the defendant was properly served, pursuant to Rule 4(f)(C)(ii), Fed.R.Civ.P., and that the defendant appeared to be in default for failing to respond to the complaint. Accordingly, that Order directed a magistrate judge to prepare a report and recommendation concerning (i) whether personal jurisdiction existed over the defendant, (ii) whether default should be entered against the defendant, and (ii) if so, the appropriate relief to be awarded the plaintiff.[6]

In a Report and Recommendation dated October 11, 2002, the magistrate judge recommended a finding of no personal jurisdiction over Raju.[7] On October 25, 2002, GMAC responded by filing an objection to the Report, contesting that recommendation. Accordingly, the matter is now ripe for a determination of whether there is personal jurisdiction over Raju based on the facts alleged in the record.

**6.** *See Graduate Management Admission Council v. Raju,* Civil Action No. 02–581–A (E.D.Va. September 9, 2002) (Order).

**7.** *See Graduate Management Admission Council v. Raju,* Civil Action No. 02–581–A (E.D.Va. October 11, 2002) (Report and Recommendation).

**8.** Because the Virginia long-arm statute has been construed by Virginia courts to extend personal jurisdiction to the full extent permitted by the Due Process clause, the first inquiry is often merged with the due process analysis. *See, e.g., Young,* 315 F.3d at 260–61 (citing *English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir.1990)). Yet, the statute's subsection (4), applicable to tortious injury caused by actions outside the state, appears narrower than the unqualified "transacting business" language of subsection (1), and also appears to require more substantial contacts with the state than does the Due Process clause. *See* Va.Code § 8.01–3.28.1(A)(1) &

## II.

### A.

█ The determination of *in personam* jurisdiction involves a two-step inquiry. *See, e.g., Alitalia–Linee Aeree Italiane v. Casinoalitalia.com,* 128 F.Supp.2d 340, 347 (E.D.Va.2001); *ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 710 (4th Cir.2002). A court must first determine whether the facts of the case fall within the reach of Virginia's long-arm statute. *See Alitalia–Linee,* 128 F.Supp.2d at 347. Second, a court must determine "whether the long-arm statute's reach in the case exceeds its constitutional grasp," by considering whether the exercise of personal jurisdiction is consistent with "traditional notions of fair play and substantial justice" under the Due Process clause. *Id.* at 347–48; *see also Young v. New Haven Advocate,* 315 F.3d 256, 261 (4th Cir.2002).[8]

### 1. *Virginia long-arm statute*

█ The conduct alleged by GMAC clearly places Raju within the reach of the

(4). Thus, it is not clear whether merging the two inquiries is appropriate regardless of which subsection applies, or whether actions relying on subsection (4) require a separate statutory inquiry. *See Young,* 315 F.3d at 260–61 (merging the inquiries in an action involving tortious injury caused by actions outside the state); *but see Booth v. Leaf,* 1994 WL 620651 (4th Cir. November 3, 1994) ("[A]lthough Virginia's long-arm statute has been extended to the limits of due process, jurisdiction under § 8.01–328.1(A)(4) requires this Court to find that the specific statutory requirements are met even in those situations where it could plausibly be argued that a lesser standard would meed due process.") (citations omitted). *Cf. Stover v. O'Connell Associates, Inc.,* 84 F.3d 132, 135–36 & n. * (4th Cir.1996) (following directly on point Maryland state case law to hold that the Maryland version of subsection (4) extends jurisdiction to the limits of the Due Process clause, despite the apparent language of the statute to

Virginia long-arm statute. The Virginia long-arm statute provides for personal jurisdiction over a person "causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Va. Code § 8.01–328.1(A)(4). Raju's actions in operating his website and selling the GMATplus materials caused tortious injury to GMAC in Virginia through his alleged actions in violation of federal trademark and copyright law. *See Alitalia–Linee*, 128 F.Supp.2d at 348. Moreover, it is well established that soliciting business through a website accessible by Virginians satisfies the remaining requirement of the long-arm statute, namely that the person "does or solicits business, or engages in any other persistent course of conduct" in Virginia. *See Alitalia–Linee*, 128 F.Supp.2d at 348; *Rannoch, Inc. v. the Rannoch Corp.*, 52 F.Supp.2d 681, 684 (E.D.Va.1999); *Black & Decker Inc. v. Pro–Tech Power Inc.*, 26 F.Supp.2d 834, 842 (E.D.Va.1998); *TELCO Communications v. An Apple A Day*, 977 F.Supp. 404, 406–07 (E.D.Va.1997). Thus, the magistrate judge properly concluded that the requirements of the Virginia long-arm statute were met.

### 2. Due Process analysis

■ The second prong of the personal jurisdictional inquiry requires a consider-

ation of the constitutionality of personal jurisdiction under the Due Process clause. Under the well-established *International Shoe* formulation, the exercise of personal jurisdiction over a defendant requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also ALS Scan*, 293 F.3d at 710–12 (discussing the modern development of personal jurisdiction doctrine). Personal jurisdiction can be established under either general or specific jurisdiction. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Where, as here, the defendant's contacts with the forum are also the basis for the suit, specific jurisdiction is appropriate. *See ALS*, 293 F.3d at 712. In determining whether specific jurisdiction exists, courts must consider "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.*, citing *Christian Science Board of Directors of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir.2001).[9]

As the Fourth Circuit noted in *ALS*, this due process analysis must take account of

the contrary) (citing *Camelback Ski Corp. v. Behning*, 307 Md. 270, 513 A.2d 874 (1986)). Because it may be possible to meet the due process requirements without falling within the literal reach of subsection (4), it is prudent to conduct the statutory analysis in this case. *See Alitalia–Linee*, 128 F.Supp.2d at 348 n. 18.

**9.** General jurisdiction, which is necessary when the contacts with the forum are not the basis for the suit, is analyzed under the more demanding "continuous and systematic" standard. *ALS*, 293 F.3d at 712.

the modern reality of widespread Internet electronic communications. *See ALS,* 293 F.3d at 713. Accordingly, the Fourth Circuit recently adopted the *Zippo* "sliding-scale" approach for determining whether Internet activity can serve as a basis for personal jurisdiction. *See ALS,* 293 F.3d at 713–14 (discussing *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997)).

▮ Under the now-familiar *Zippo* test, the likelihood that personal jurisdiction can be constitutionally exercised is determined by focusing on "the nature and the quality of commercial activity that an entity conducts over the Internet." *Id.* at 713. Passive websites, that do "little more" than make information available to users in other jurisdictions, cannot support personal jurisdiction everywhere that information is accessed. *Id.* at 714. At the other end of the spectrum are situations where a defendant "clearly does business over the Internet," for example through the "knowing and repeated transmission of files over the Internet," which clearly do support personal jurisdiction. *Id.* In between is the "middle ground" of "interactive Web sites" which are not passive, because they allow a user to exchange information with the host computer, but also do not constitute "clearly do[ing] business over the Internet." *Id.* To determine whether an "interactive" website is grounds for personal jurisdiction, a court must consider the "level of interactivity and the commercial nature of the exchange of information that occurs on the Web site." *Id.*

In this regard, the Fourth Circuit "adopt[ed] and adapt[ed] the Zippo model" as follows:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*ALS,* 293 F.3d at 714. A comparison of this formulation to the original *Zippo* test indicates that the *ALS* test emphasizes that requirement of *purposeful* targeting of a particular forum, not just the level of interactivity. Under the *ALS* test, the defendant must *direct* activity into the forum state, with the *intent* to engage in business *within the state.* As the *ALS* panel makes clear, personal jurisdiction requires "purposeful availment," that is "*purposeful* conduct directed at the State." *Id.* at 712–13 (emphasis in original).[10]

▮ In this case, GMAC asserts that the following contacts support a finding of personal jurisdiction based on Raju's contacts with Virginia: First, Raju's site is not merely passive; through it, he solicited orders of his infringing materials from Virginia residents. Second, Raju specifically targeted Virginia residents, by listing a testimonial from a Virginia customer and by selling and shipping materials to at least two Virginia residents. Third, Raju's

---

**10.** *See also Alitalia–Linee,* 128 F.Supp.2d at 348–49 ("[J]urisdiction is only appropriate in circumstances where a defendant has purposefully directed his activities at residents of the forum.").

The *ALS* panel also notes that the "stream-of-commerce" concept, under which a person who "puts an article into commerce is held to anticipate suit in any jurisdiction where the stream takes the article," has never been adopted by the Supreme Court. *ALS,* 293 F.3d at 713; *see also Alitalia–Linee,* 128 F.Supp.2d at 349. In this case, it should be noted, it is alleged that it was Raju himself, not the indirect workings of the "stream of commerce," that directed the infringing materials into Virginia.

activities were targeted at and infringed the rights of GMAC, a Virginia corporation. Fourth, colleges and universities in Virginia rely on the GMAT. Finally, Raju registered the allegedly infringing domain name with Network Solutions, Inc. ("NSI"),[11] a Virginia company which served as the registry for all ".com" and ".net" domain names.

These contacts, evaluated in light of the three part *ALS* test, point ultimately to the absence of personal jurisdiction. *See ALS*, 293 F.3d at 714. Although some parts of the test are met,[12] it is doubtful whether Raju can be said to have "direct[ed] electronic activity into the state" with the "intent of engaging in business . . . within the State," as required by the first and second elements of the *ALS* test. *Id.* First, mere registration of the domain name with a company located in Virginia does not support personal jurisdiction in this state. *See Heathmount A.E. Corp. v. Technodome.com*, 106 F.Supp.2d 860 (E.D.Va.2000); *America Online, Inc., et al. v. Huang*, 106 F.Supp.2d 848, 856–57 (E.D.Va.2000). Second, the potential indirect injury suffered by the colleges and universities which rely on GMAT scores in their admissions process is too indirect and too diffuse to support a finding that the defendant specifically targeted Virginia. Significantly, over 1700 programs worldwide use the GMAT to evaluate candidates, thus there is no basis to conclude that Raju was knowingly targeting Virginia institutions. Third, based on the circumstances of this case, the shipment of materials to two Virginia customers is not a sufficient basis for personal jurisdiction, although the question is close. As noted by the magistrate judge, this case is distinguishable from *Alitalia–Linee*, in which jurisdiction in Virginia was based on the existence of five Virginia customers. *See Alitalia–Linee*, 128 F.Supp.2d at 349–50. In that case, which involved the sale of online gambling services over the Internet, the contact between the defendant and each individual customer was ongoing and extensive, including purchasing credits and a course of online gambling activities. *Id.* Thus, even though Virginia residents constituted only five out of the 750 total customers of the online casino, these contacts were "sufficient to put [the defendant] on notice that it is purposefully directing its activities at Virginia." *Id.* at 350. By contrast, the interaction in this case with Virginia residents was minimal; Raju simply shipped the materials to the two customers at the addresses they provided. Two shipments and one purported customer testimonial are not a sufficient basis on which to conclude that Raju was intentionally directing his website at a Virginia audience.[13] *C.f. Young*, 315 F.3d at 262–63

---

11. NSI has since been acquired by VeriSign Global Registry Services, which is also located in Virginia. *See Cable News Network v. CNNews.com*, 162 F.Supp.2d 484, 486 n. 5 (E.D.Va.2001).

12. GMAC is located in Virginia and has numerous potential causes of action cognizable in Virginia courts based on Raju's sale of GMAT materials, thus satisfying the third element of the *ALS* test. *Id.* Furthermore, Raju's efforts to sell the infringing materials through his website clearly manifest "an intent to engage in business," partially fulfilling the second element. *Id.*

13. If the existence of two customers in Virginia were sufficient to establish personal jurisdiction here, then an online retailer would be subject to suit anywhere it knowingly shipped materials. Yet, more traditional retailers are not subject to personal jurisdiction anywhere they ship their products. *See, e.g., Chung v. NANA Development Corp.*, 783 F.2d 1124 (4th Cir.1986) (finding no personal jurisdiction in Virginia based solely on a large shipment of reindeer antlers to Virginia). Indeed, if personal jurisdiction could be grounded on these two shipments, a plaintiff could create personal jurisdiction over an online retailer in any forum nationwide or worldwide by sim-

("[T]he fact that the newspapers' websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience.").

Finally, GMAC also relies on the fact that the tortious conduct was targeted at GMAC, which is located in Virginia. In some circumstances, the location of the plaintiff, as the "focal point ... of the harm suffered" can form the basis for personal jurisdiction. *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).[14] The *ALS* test accommodates the *Calder* approach to finding jurisdiction based on the location of the harm caused by the tortious conduct. *See Young*, 315 F.3d at 262–63; *ALS*, 293 F.3d at 714. However, the *Calder* approach does not obviate the requirement to show purposeful availment, it is rather an alternate method of proving that the defendant directed his activities at the forum. *See Young*, 315 F.3d at 262–63, *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 at 625–26. In this regard, "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction ... is to be upheld." *See*

*Young*, 315 F.3d at 262–63, citing *ESAB*, 126 F.3d at 626. Here, there is no indication that Raju purposefully directed his tortious activity at Virginia. Indeed, Raju's GMATplus site consistently refers to "ETS" as the entity that administers the GMAT and publishes test questions.[15] Thus, there is no indication that Raju should "reasonably anticipate being hauled into court" in Virginia based on GMAC's location there, when there is no showing that he was even aware of GMAC, let alone GMAC's location in Virginia.

In sum, the magistrate judge correctly concluded that there is no basis for personal jurisdiction in Virginia under Rule 4(k)(1)(A) based on the contacts with Virginia asserted by GMAC.

### B.

■ Although not raised by GMAC in its complaint or in its brief in opposition to the Report and Recommendation, there is an alternate basis for personal jurisdiction in this case under Rule 4(k)(2), Fed. R.Civ.P. This Rule provides for personal jurisdiction through nationwide service of process over any defendant provided (i) exercise of jurisdiction is consistent with the Constitution and the laws of the United States, (ii) the claim arises under feder-

---

ply ordering and receiving a minimal amount of product in that forum. It is just such an inappropriate result that *Chung* precludes.

14. In *Calder*, the defendants were subject to personal jurisdiction in California in a libel suit based on a story they had written and edited in Florida, because their allegedly tortious actions were "expressly aimed at California" and "they knew that the brunt of [the] injury would be felt by respondent in the State in which she lives and works." *Id.* at 789–90, 104 S.Ct. 1482. On these facts, the Supreme Court held that, "[u]nder the circumstances, petitioners must 'reasonably anticipate being haled into court there' to an-

swer for the truth of the statements made in their article." *Id.* at 790, 104 S.Ct. 1482.

15. The website states: "ETS prepares 45 types of questions ....''; "ETS officially publishes (including its Official Guide) only about one third of the questions ....''; "ETS is good at testing the same unpublished questions again and again.''; "Test-prep companies ... are poor at mimicking ETS questions." Though this record does not contain any information about ETS, the site presumably refers to Educational Testing Services, "ETS," which is located in New Jersey and administers the GMAT in partnership with GMAT.

al law, and (iii) the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state. *See* Rule 4(k)(2), Fed.R.Civ.P. *see also Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 215 (4th Cir.2002); *ISI Int'l, Inc. v. Borden Ladner Gervais LLP,* 256 F.3d 548, 551–52 (7th Cir.2001); *United States v. Swiss American Bank, Ltd.,* 191 F.3d 30, 38 (1st Cir.1999); *Dee–K Enterprises, Inc. v. Heveafil Sdn. Bhd.,* 982 F.Supp. 1138 (E.D.Va.1997). Rule 4(k)(2) was added in 1993 to deal with a gap in federal personal jurisdiction law in situations where a defendant does not reside in the United States, and lacks contacts with a single state sufficient to justify personal jurisdiction, but has enough contacts with the United States as a whole to satisfy the due process requirements. *See ISI Int'l,* 256 F.3d at 551; *Swiss American Bank,* 191 F.3d at 39–40. Precisely this situation is presented here.

*1. Due Process analysis*

The first element of the Rule 4(k)(2) analysis requires the same minimum contacts due process analysis as is conducted under Rule 4(k)(1)(A), with the significant difference that the relevant forum is the United States as a whole, not an individual State. *See Base Metal,* 283 F.3d at 215 (holding that the plaintiff must demonstrate that defendant's "contacts with the United States as a whole support the exercise of jurisdiction consistent with the Constitution and laws of the United States."); *ISI Int'l,* 256 F.3d at 551 ("So far as the

Constitution is concerned, the right question is whether [the defendant] has contacts with the United States.").[16]

In considering Raju's contacts with the United States in this case, the *ALS* test for determining personal jurisdiction based on electronic activities, must be adapted for the purpose of national contacts analysis. Substituting the United States as the relevant forum, the test requires a showing in this case (i) that Raju directed his electronic activity into the United States, (ii) that he did so with the manifest intent of engaging in business or other interactions within the United States, and (iii) that his activity creates a potential cause of action in a person within the United States that is cognizable in the United States' courts. *See ALS,* 293 F.3d at 714.

Raju's alleged activity plainly creates a potential cause of action in a person within the United States which is cognizable in federal courts, satisfying the third element of the *ALS* test. GMAC is a Virginia nonprofit corporation and thus a "person" within the United States. GMAC's causes of action are based on federal law, and thus are clearly cognizable in federal courts. It is also clear that Raju's intent is to "engag[e] in business," namely the business of selling his GMAT test preparation materials to buyers for a substantial fee. Thus, the second element of the *ALS* test is fulfilled in part. All that remains is a showing that Raju "directed his electronic activity" into the United States, with the intent of engaging in business "within the

**16.** The Due Process clause protects persons from being "haled into a court" unless they have sufficient contacts with the "sovereign that established the court." *ISI Int'l,* 256 F.3d at 551. Thus, in the usual situation where personal jurisdiction is asserted under Rule 4(k)(1)(A), which links personal jurisdiction in the federal court to the existence of personal jurisdiction in the state court, the question is whether there are sufficient contacts with the forum state. Rule 4(k)(2), of course, does not link personal jurisdiction to the existence of personal jurisdiction in the local state courts, indeed, its express purpose is to permit jurisdiction where no state court has personal jurisdiction. Thus, the due process question under Rule 4(k)(2) depends solely on whether the defendant has sufficient contacts with the United States as a whole. *See id., Base Metal,* 283 F.3d at 215.

United States," as required by the first and second elements of the *ALS* test.

The record clearly indicates that Raju directed his activity at the United States market and specifically targeted United States customers.[17] The intended market for business conducted through a website can be determined by considering the apparent focus of the website as a whole. *See Young*, 315 F.3d at 263–64 (Examining the "general thrust and content" of the newspapers' websites, including the local focus of the stories, local advertisements and classifieds, local weather and traffic information, and links to local institutions, in determining that "the overall content of both websites is decidedly local."). The relevant question is whether the website is "designed to attract or serve a [United States] audience." *Id.*

There is ample evidence that Raju targeted the United States market. First, and most significantly, the GMATplus site provides specific ordering information for United States customers. The ordering information page directs customers who "live in the United States or Canada" to contact Western Union or MoneyGram, and provides the toll free numbers for use by those customers. Other customers are directed simply to "contact [their] local MoneyGram office" or use a hyperlink to MoneyGram to find the nearest local office. No other countries apart from the United States and Canada are mentioned

by name on the ordering information page. Thus, ordering information for customers in the United States (and Canada) is provided first and with more specificity than for customers from other countries. Second, the ordering information page informs customers that materials will "reach most parts of the world (including the US) within 3–5 working days." Third, the prices for the products are listed in dollars, presumably United States dollars. Fourth, three of the six testimonials are purportedly from United States citizens. Fifth, the promotional text on the site suggests that Raju's materials will allow American citizens and others to catch up with test takers from "India, China, Korea, Japan, and Taiwan," who purportedly score better on the test as a group than "their American or European counterparts ... because most of them have access to 100 percent of unpublished previous questions in these countries." Finally, Raju confirmed his apparent intent to serve United States customers by shipping his materials to the two Virginia residents mentioned in the record.

In sum, it is quite clear upon review of the GMATplus website and the record as a whole that while Raju may have aimed his website at the entire, worldwide market of GMAT test takers, he specifically directed his electronic activity at the United States market and did in fact ship materials in the United States.[18] Thus, GMAT has

---

**17.** In other cases, simply aggregating contacts on a nationwide basis instead of on a state by state basis may provide sufficient contacts to support the conclusion that the defendant knowingly directed his activities into the forum, but such is not the case here. The record still names only the two Virginia residents as customers who actually received Raju's materials in the United States. However, it is not necessary here to infer from the number of contacts that Raju was targeting his activity at the United States market be-

cause the GMATplus website provides direct evidence of Raju's focus on this market.

**18.** In concluding that Raju did not direct his activity at Virginia, the Report and Recommendation noted that the website "appears principally to target customers from outside the United States." GMAC argues strongly and persuasively against this conclusion. However, even assuming that the website does "principally target" foreigners, it is nonetheless clear that Raju is also directing

shown under the *ALS* test that Raju "direct[ed] his electronic activity into [the United States] with the manifested intent of engaging in business ... within [the United States]," satisfying the remaining elements of the *ALS* test. It follows that the exercise of personal jurisdiction based on nationwide contacts under 4(k)(2) comports with constitutional due process requirements in this case.

### 2. Remaining issues under Rule 4(k)(2)

The second element of Rule 4(k)(2)—that the claim arise under federal law—is readily shown. *See* Rule 4(k)(2), Fed R. Civ. P. GMAC's five claims, for copyright infringement, trademark infringement, dilution, cyberpiracy, and unfair competition, all arise under and are expressly predicated on federal statutes.

The final element of Rule 4(k)(2) requires a showing that the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state. *See* Rule 4(k)(2), Fed R. Civ. P. Federal courts have struggled in determining how fairly to assign the burden of making this showing, since it apparently places a burden on plaintiffs, who bear the burden of establishing personal jurisdiction, to "prove a negative," namely that the defendant is not subject to personal jurisdiction, in all fifty states. *See, e.g. Swiss American Bank,* 191 F.3d at 40–42 (applying a burden-shifting approach modeled on the *McDonnell Douglas* approach); *ISI Int'l,* 256

F.3d at 552 (applying a more pragmatic approach, whereby the defendant must name a suitable forum state or concede that jurisdiction is not available in any state). Yet, on this record, it is readily apparent that personal jurisdiction is unavailable in any state. There are no specific contacts with any state other than Virginia, and the Virginia contacts are not sufficient to support jurisdiction in Virginia. Moreover, plaintiffs have no access to evidence that might provide more detail on Raju's possible contacts with other states; the defendant is in default and has neither appeared nor been subject to discovery.[19] Accordingly, the proper conclusion on this record is that there is no personal jurisdiction over Raju in any district.

■ A final matter that must be addressed before finding jurisdiction under Rule 4(k)(2) in this case is the fact that GMAC has not asserted 4(k)(2) as a basis for jurisdiction.[20] This omission is not decisive, for it is clear that "[f]ederal courts are entitled to apply the proper body of law, whether the parties name it or not." *ISI Int'l,* 256 F.3d at 551–52 (citing *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), and finding jurisdiction under Rule 4(k)(2) though the parties did not raise rule 4(k)(2) at the district court or appellate level). GMAC has consistently argued that jurisdiction

---

his activities, at least in part, at the United States.

**19.** In this situation, it would be inappropriate to require more than a *prima facie* showing that Raju is not subject to jurisdiction in any state. Otherwise defendants, who typically control the information needed for the personal jurisdiction inquiry, could thwart jurisdiction under Rule 4(k)(2) by refusing to appear. If plaintiffs seek to enforce a judgment entered in this case in another district in the United States, Raju could appear in that dis-

trict and collaterally attack the jurisdictional finding here, but would have to concede personal jurisdiction there. *See Foster v. Arletty 3 SARL,* 278 F.3d 409, 413 (4th Cir.2002); *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

**20.** But it should be noted in this regard that GMAC does argue that the record supports a showing that Raju targeted the United States as a whole.

would be proper in the Virginia courts, which is in apparent contradiction with a claim of personal jurisdiction under Rule 4(k)(2).[21] Yet, personal jurisdiction claims may be properly analyzed in the alternative under 4(k)(1)(A) and 4(k)(2). *See Dee–K Enterprises*, 982 F.Supp. at 1144 n. 10 (holding that Rule 4(k)(2) provides an alternative basis for jurisdiction to the extent that plaintiffs allegations do not support jurisdiction under the Virginia long-arm statute). Thus, neither GMAC's failure to assert jurisdiction under 4(k)(2), nor its assertion of jurisdiction under Rule 4(k)(1)(A) operate to change the conclusion that there is jurisdiction here under Rule 4(k)(2)'s nationwide contacts analysis.

In sum, the record shows that there is no personal jurisdiction over Raju in any state court, that GMAC's claims arise under federal law, and that Raju's contacts with the United States are sufficient to permit the exercise of personal jurisdiction in this matter without violating due process. In other words, while the record clearly shows that Raju directed his activities at the United States market, in apparent violation of GMAC's rights, he did not sufficiently direct his activities at any given state to justify a finding of personal jurisdiction in any state court. Rule 4(k)(2) was enacted precisely to fill this gap in personal jurisdiction under Rule 4(k)(1)(A). *See ISI Int'l*, 256 F.3d at 551; *Swiss American Bank*, 191 F.3d at 39–40.

Accordingly, there is personal jurisdiction over Raju under Rule 4(k)(2). To find otherwise would not only frustrate GMAC's attempts in this case to vindicate its rights under United States law, by requiring GMAC to turn to foreign courts to vindicate those rights against a likely elusive defendant, it would also provide a blueprint whereby other individuals bent on violating United States trademark and copyright laws could do so without risking suit in a United States court.

### III.

In conclusion, there is personal jurisdiction here over Raju under Rule 4(k)(2), Fed.R.Civ.P. It is also apparent on the record that Raju is in default. Accordingly, the magistrate judge is directed in an accompanying order to take whatever steps deemed necessary to determine the appropriate relief to be awarded GMAC in this matter.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

---

**21.** In *Base Metal*, the Fourth Circuit appears to fault a plaintiff for arguing jurisdiction under Rule 4(k)(2), while claiming jurisdiction in Virginia courts and without asserting in the alternative or otherwise that the defendant was not subject to personal jurisdiction in any state. *See Base Metal*, 283 F.3d at 215. Nonetheless, the *Base Metal* panel acknowledges that alternative presentations in this regard are possible and did proceed to address the merits of the question. *Id.* In denying personal jurisdiction under Rule 4(k)(2), the *Base Metal* panel notes (i) that the question of jurisdiction in other states was pending in at least one sister circuit, (ii) that the evidence proffered by the plaintiff was not sufficient to establish a lack of jurisdiction in any state court, (iii) that the evidence in the record did not support a finding that defendant's contacts with the United States were sufficient, and (iv) that both parties had "little or no connection" to this country. *Id.* at 215–16. This case is distinguishable on all four grounds.