AMERICA ONLINE, INC., Plaintiff,

v.

AOL.ORG, Defendant.

No. CIV.A. 02–1116–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 23, 2003.

James Ramsey Davis, II, Arent Fox Kintner Plotkin & Kahn P.L.L.C., Washington, D.C., for Plaintiffs.

## MEMORANDUM OPINION

ELLIS, District Judge.

The matter came before the Court on plaintiff's motion to amend the Judgment Order entered on November 15, 2002 in favor of plaintiff in this *in rem* action under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(2). *See America Online, Inc. v. aol.org,* Civil Action No. 02–1116–A (E.D.Va. November 15, 2002) (Judgment Order). That Judgment Order directed the domain name registrar, OnlineNIC, Inc., which is headquarted in China, to transfer the domain name <aol.org> to plaintiff within 20 days of receipt of the order. *Id.* Despite receipt of that Order,

OnlineNIC has declined to transfer the domain name; instead, OnlineNIC, presumably at the registrant's request, has transferred the domain name to another foreign registrar, Netpia.com, Inc. ("Netpia"), which is located in South Korea. Therefore, plaintiff now requests that the Judgment Order be amended to direct Public Interest Registry ("PIR"), the ".org" domain name registry,[1] as well as OnlineNIC, Netpia, and any other registrar that may become involved, to transfer the domain name <aol.org> to plaintiff.

At the properly-noticed hearing on this motion only plaintiff appeared. Neither the current registrant, nor any registrar, past or present, appeared. Indeed, none of these entities has appeared or filed any pleadings in this action. In the circumstances, the motion to amend the Judgment Order is now ripe for disposition.

As the Judgment Order notes, the domain name <aol.org> was registered by Korea DNS, a South Korean entity, on September 3, 2001, and subsequently transferred first to an individual, Sujin Jeon, and thereafter to an individual listed as simply as "Will E." On July 30, 2002, plaintiff, the holder of registered United States trademarks for AOL and AOL. COM, filed this ACPA action. In August, 2002, after receiving notice and a copy of the complaint, OnlineNIC sent plaintiff an email agreeing, consistent with the ACPA, not to "transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court." 15 U.S.C. § 1125(d)(2)(D)(I)(ii); *see* Pl. Mot. Ex. B (email correspondence). But OnlineNIC

---

1. As of January 1, 2003, PIR replaced VeriSign, Inc. as the official, exclusive registry for all ".org" domain names. In the November 15, 2002 Judgment Order, jurisdiction here was based on VeriSign's location within this district, in Herndon Virginia. *See America Online, Inc. v. aol.org,* Civil Action No. 02– 1116–A (E.D.Va. November 15, 2002) (Judgment Order); 15 U.S.C. § 1125(d)(2)(A). Jurisdiction remains appropriate here, as PIR, the new ".org" registry, is likewise located within this district, with its principal place of business in Reston, Virginia.

did not deposit with the Court a registrar's certificate acknowledging the Court's authority over the domain name pursuant to this *in rem* action, as required by 15 U.S.C. § 1125(d)(2)(D)(i)(I).

■ As the Judgment Order makes clear, this action properly proceeded *in rem* under the ACPA. First, jurisdiction was proper in this district, as VeriSign, the ".org" domain name registry prior to PIR, is located in this district. *See* 15 U.S.C. § 1125(d)(2)(A) (providing jurisdiction of an *in rem* suit in the judicial district where "the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located.") And, as PIR, the current ".org" registry, is also located in this district, jurisdiction remains proper under the ACPA. Second, an *in rem* action is proper as plaintiff is unable to assert personal jurisdiction over the current registrant, Will E. *See* § 1125(d)(2)(A)(ii)(I); *see also Globalsantafe v. Globalsantafe.Com*, 250 F.Supp.2d 610, 615–16 (E.D.Va.2003). In this regard, Will E. apparently resides in South Korea and there is no evidence that he has any contacts with the United States or Virginia. Further, the two web sites that have operated under the <aol.org> domain name provide no basis for jurisdiction. *See ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 713–15 (4th Cir.2002) (discussing jurisdiction based on Internet activities); *Alitalia-Linee Aeree Italiane v. Casioalitalia.com*, 128 F. Supp 2d 340, 349 (E.D.Va.2001) (same). One web site, entitled "All Our Life," was a purely passive site, consisting of little more than the title and an "under construction" notice. And, it is clear that such passive web sites do not support jurisdiction in a forum state merely because they may be accessed from the state. *See ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002); *America Online, Inc. v. Huang*, 106 F.Supp.2d 848, 859 (E.D.Va.2000). The current web site, entitled "X–Y World," provides information related to Internet and computer usage in the Korean language, and does not appear to be targeted at, or used by, residents of Virginia or the United States. *See ALS Scan*, 293 F.3d at 712–13 (noting that personal jurisdiction requires "purposeful availment," that is, "*purposeful* conduct directed at the State.") (emphasis in original); *see also Graduate Management Admission Council v. Raju*, 241 F.Supp.2d 589, 597 (E.D.Va.2003) (discussing personal jurisdiction based on a web site that targets the United States as a whole). Finally, plaintiff perfected service as required under the ACPA by sending notice to the postal and email addresses found in the registration information and by publishing notice of the action in a local Korean newspaper. *See* § 1125(d)(2)(A)(ii)(II)(aa) & (bb). In sum, as the Judgment Order reflects, this action meets the ACPA's jurisdictional requirements.

■ As also detailed in the Judgment Order, plaintiff has convincingly established all the elements of trademark infringement under 15 U.S.C. §§ 1114 & 1125(a). To establish a trademark infringement or unfair competition claim plaintiff must show "(1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services, and (5) that the defendant used the mark in a manner likely to confuse consumers." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir.2001) (citation omitted). In this regard, plaintiff owns the marks AOL and AOL.COM, Reg. Nos. 2,325,291 and 2,325, 292, and has used them continuously since 1989. It is also clear that the registrants

have used the infringing domain name in commerce in connection with the sale of goods or services by linking the name to a Korean language web site with further links to pages that promote various Internet and computer-related services. *See id.* at 365–66 (holding that a web site which links to web pages selling goods or services satisfies the third *PETA* element). Finally, this use of the <aol.org> domain name is likely to confuse consumers, as it is identical in relevant part to plaintiff's registered AOL mark and confusingly similar to plaintiff's AOL.COM mark. Indeed, the registrants' only apparent purpose in registering the <aol.org> domain name, which has no legitimate connection to the registrants or the Korean language web site, was to divert Internet traffic intended for plaintiff to their own site.[2] Thus, the registrants' registration and use of the <aol.org> domain name constitutes trademark infringment or unfair competition, and plaintiff is entitled to relief on pursuant to § 1125(d)(2)(A)(i).

Following entry of the Judgment Order on November 15, 2002, a copy was promptly sent by the Clerk of the Court to OnlineNIC at its listed San Francisco address. Additionally, on November 22, 2002, plaintiff sent a copy of the Judgment Order to OnlineNIC by email and facsimile transmission, and requested that OnlineNIC transfer the domain name to plaintiff. On November 25, 2002, OnlineNIC responded to plaintiff by email and agreed to transfer the domain name to plaintiff pursuant to the Judgment Order. In response, plain-

tiff set up an online account to receive the transferred domain name and provided OnlineNIC with the information necessary to facilitate the transfer. Yet, in the end OnlineNIC declined to transfer the domain name to AOL. Instead, it authorized the transfer of <aol.org> to a new registrar, NetPia, a South Korean company, in violation of both the Judgment Order and 15 U.S.C. § 1125(d)(2)(D)(i)(II) (stating that a registrar with notice of an ACPA action must "not transfer … or otherwise modify the domain name during the pendency of the action, except upon order of the court").[3] Although NetPia now serves as the registrar for the domain name <aol.org>, the registrant of that name, "Will E.," remains unchanged.

According to the record, plaintiff has contacted both OnlineNIC and Netpia, as well as PIR, the ".org" registry, in an effort to have the domain name transferred. It appears that Netpia has also refused to transfer the domain name to plaintiff in accordance with the Judgment Order. It also appears from plaintiff's affidavit that PIR, by contrast, has agreed to transfer <aol.org> to plaintiff if presented with a specific court order to do so.

This case well illustrates the difficulties frequently encountered by trademark owners who prevail in *in rem* ACPA cases and then seek to enforce court domain name transfer orders against foreign registrars and registrants. Here, it appears the domain name at issue has been shuttled through three foreign registrants and two

---

**2.** Although there is ample evidence of bad faith on the part of the registrant, proof of bad faith is not necessary in order to prevail on an *in rem* action for trademark infringement. *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 228–32 (4th Cir. 2002).

**3.** Plaintiff states that this transfer occurred "on or about" February 3, 2002, although the

basis for this date is not clear in the record. The current "whois" record information for <aol.org>, which names Netpia as the registrar, indicates that the domain name record was last updated on November 27, 2002. This suggests that OnlineNIC authorized the transfer of the domain name to Netpia shortly after it had agreed to transfer the domain name to plaintiff.

foreign registrars in succession, rather like a children's game of "keep away." Moreover, the current registrant and sole listed contact for the domain name, the mysterious "Will E.," is likely fictitious. And, the latest transfer of the domain name from OnlineNIC to Netpia is yet another step in this "keep away" game, plainly intended to delay further or frustrate enforcement of the Judgment Order. Indeed, it appears that this latest change of registrars may have been motivated by a desire on the part of the registrant, or those controlling a fictitious registrant, to place another obstacle in the path of enforcing the Judgment Order by ensuring that the domain name in issue is in the hands of a registrar with no contacts with this country. OnlineNIC, the previous registrar, although headquartered in China, also maintains an office and employees in San Francisco, California, and plaintiff might have sought to enforce the Judgment Order through a federal court in that city. By contrast, Netpia, the current registrar, apparently has no American footprint, which invites the inference that this was the reason for the change of registrars.

 Thus, the motion at bar presents the question, discussed but not decided in *Globalsantafe*, 250 F.Supp.2d at 622–25, namely whether federal courts in ACPA *in rem* cases may order a domain name registry to transfer an infringing domain name from the infringer to the trademark holder where, as here, the registrar has refused or failed to do so after notice of an appropriate order.[4] A brief review of *Globalsantafe* is appropriate.

The *Globalsantafe* plaintiff, like the instant plaintiff, was confronted with the problem of a recalcitrant foreign registrar not subject to the jurisdiction of any American court. But unlike the plaintiff here, the *Globalsantafe* plaintiff sought only to have the registry cancel the infringing domain name, pending the possible future transfer of the domain name by the foreign registrar. More specifically, the *Globalsantafe* plaintiff requested an order that directed the registry to disable the domain name pending a future transfer, thereby rendering the domain name inoperative without deleting the infringing registrant's registration information. *Id.* at 624–25.

In considering whether the form of cancellation requested was an appropriate remedy under the ACPA, the *Globalsantafe* opinion discussed at some length three possible means to carry out a cancellation remedy, namely (i) an order directing the registrar to cancel the domain name by issuing a request to the registry according to the usual procedures, (ii) an order directing the registry to disable the domain name by placing it on hold status and rendering it inactive, and (iii) an order directing the registry to act unilaterally to delete the domain name registration without the registrar's cooperation. *Id.* at 617–18. Based on this discussion, the *Globalsantafe* opinion concluded that all three approaches "may be appropriate" means to cancel a domain name. *Id.* at 623. Yet, it was not necessary there to decide ultimately whether the third approach—directing the registry to delete the domain name registration—was appropriate, as the plaintiff stopped short of requesting such relief. *Id.* at 624.

Plaintiff here requests an order that reaches beyond the relief granted in *Globalsantafe* in two respects. First, the order requested here would direct the regis-

---

4. Plaintiff also requests that the order additionally direct OnlineNIC, Netpia, and any other registrar that may become involved in this matter to transfer the domain name. Ex- perience suggests this would likely be futile. Simply ordering the registry to transfer the domain name will be efficacious and will provide plaintiff with the full relief it seeks.

try to transfer the domain name rather than merely cancelling it. Second, the order requested here would direct the registry to act unilaterally to transfer the domain name, an action which, unlike the disabling remedy in *Globalsantafe*, appears to be beyond the scope of the registry's contractually-defined procedures for domain name registration, cancellation, and transfer. Nonetheless, the appropriateness of the relief requested here is readily apparent following *Globalsantafe* and requires only a modest extension of the holding in that case.[5]

As noted in *Globalsantafe*, the ACPA explicitly provides for both transfer and cancellation of domain names as remedies for ACPA violations. *See Globalsantafe* at 622; 15 U.S.C. § 1125(d)(2)(D)(i). And, nothing in that statute limits the transfer and cancellation remedies to orders directed only at the domain name registrar; the ACPA neither requires nor implies that cancellation and transfer orders be directed solely at registrars and not registries. *See Globalsantafe* at 622; 15 U.S.C. § 1125(d)(2)(D)(i). Furthermore, the ACPA provides for jurisdiction in the district in which the registrar *or* the registry is located and designates the location of the registrar *or* the registry as the *situs* of a domain name subject to an *in rem* action. *See* 15 U.S.C. §§ 1125(d)(2)(A) & (d)(2)(C)(i). These jurisdictional provisions weigh strongly against any notion that the transfer and cancellation remedies authorized by the ACPA in § 1125(d)(2)(D)(i) are somehow limited to orders directed at registrars, but not registries. Congress deliberately and sensibly provided for jurisdiction where the registry is located so there would be no doubt that courts had the power to direct the registry to carry out the authorized ACPA remedies of transfer and cancellation. Thus, the statutory remedies granted under the ACPA for *in rem* actions are properly enforced by a court order directing the registry, if necessary, to transfer an infringing domain name to the trademark owner.

Moreover, as also noted in *Globalsantafe*, the private contractual agreements between a registry, its registrars, and ICANN, the registry's authorizing organization, cannot limit the relief authorized by the ACPA. *Id.* at 622. To be sure, under the governing contracts, the transfer or cancellation of a domain name normally requires the approval or initiative of the current domain name registrar. *Id.* at 619–20. Even so, it is not clear that a registry that transferred a domain name in response to a court order to do so would be acting in violation of these private contracts.[6] More significantly, even assuming *arguendo* that an order directing a registry to transfer a domain name *would* re-

---

5. In this regard, it should be noted that the ".org" registry, PIR, has not been named as a party and is therefore not a party in this case. Nor have the current registrar, Netpia, and the current registrant, Will E., made an appearance. Accordingly, no objections, either practical or legal, to the issuance of a transfer order directed at the registry have been raised. Indeed, plaintiff indicates in an affidavit that PIR is willing to transfer the domain name, provided the order specifically directs it to do so. Nonetheless, the propriety of a transfer order directed at the registry is considered in some detail here.

6. As noted in *Globalsantafe*, such a transfer by a registry, *pursuant to a court order*, would not appear to constitute the registry's "acting as a registrar" in violation of the registry's authorizing contract with ICANN. *Id.* at *8. Moreover, in situations where, as here, the registrar refuses to transfer a domain name pursuant to a valid court order, the registrar is likely itself in breach of the registrar-registry agreement and thus may not be entitled to assert a breach of the contract against the registry. *Id.* It is, therefore, far from clear that a registry would be violating its private contractual obligations in responding to a court order to transfer a domain name.

quire a registry to breach its contractual agreements with ICANN or the registrar, such private agreements "cannot serve to limit the trademark rights and remedies granted to [plaintiff] by federal law under the Lanham Act and the ACPA." *Id.* In other words, in this instance, "the interest in vindicating congressionally provided trademark rights trumps contract." *Id.*

Finally, there does not appear to be any relevant practical difference between an order directing the registry to cancel a domain name and one directing the registry to transfer it. Nor do there appear to be any technical obstacles presented by ordering transfer instead of cancellation. In either case, the registry's ability to delete or change the registration information stems from its physical control of the Registry Database which contains all the domain name registrations in the top-level domain for which the registry is responsible. *See id.* at 622 (noting that this control "effectively enables" the registry to "transfer control of any . . . domain name" within the top-level domain it controls) (quoting *Cable News Network v. CNNEWS. com,* 177 F.Supp.2d 506, 514 n. 16 (E.D.Va. 2001) (hereinafter *CNN II* ), *aff'd in relevant part, vacated in part by* 56 Fed.Appx. 599, 2003 WL 152846 (4th Cir. Jan. 23, 2002) (hereinafter *CNN III* ) (unpublished)). Domain name transfer by the registry is only marginally more complicated than domain name cancellation in that it requires cooperation by the acquiring registrar and the acquiring registrant to supply the appropriate information to be entered into the Registry Database. *Id.* at 522 n. 37. Yet, this cooperation should typically be no obstacle as the trademark owner is the acquiring registrant and it can choose the acquiring registrar and supply the pertinent information for entry in the Registry Database.

In sum, an order directing PIR, the ".org" registry, to act unilaterally, without the registrar, to transfer the <aol.org> domain name to plaintiff by altering the information in the ".org" Registry Database maintained and controlled by PIR is an appropriate and available remedy under the ACPA where, as here, the registrar is uncooperative and declines to comply with a proper ACPA transfer order. Nonetheless, because the registrant and the current and prior registrars are foreign, and because their ability to use or administer the <aol.org> domain name will be affected by an order directing PIR to transfer <aol.org> to plaintiff, it is appropriate to consider whether the interests of international comity militate against applying this available remedy here.

First, it should be noted that, unlike in *Globalsantafe,* there is no evidence in this record that either OnlineNIC or Netpia face a conflicting order from a foreign court directing them not to transfer the domain name to plaintiff, nor is there evidence of an ongoing, concurrent suit in foreign courts with regard to the <aol.org> domain name. *Compare Globalsantafe* at *2. Thus, there is no need to consider here whether it would be appropriate to defer to the jurisdiction and order of a foreign court. *See id.* at *10.

Second, it is now settled that, even though the registrant and the registrar are foreign, the location of the ".org" registry in this district establishes the *situs* of the <aol.org> domain name here in Virginia and thus provides jurisdiction for an *in rem* action against the domain name itself in this district. *See* 15 U.S.C. § 1125(d)(2)(A) (providing for an *in rem* civil action against a domain name "in the judicial district where the . . . domain name registry . . . is located"); *Cable News Network,* 162 F.Supp.2d 484, 489–92 (E.D.Va.2001) (hereinafter *CNN I* ) (holding that the location of the registry within this district is sufficient to establish juris-

diction for an *in rem* action under the ACPA, and that this jurisdiction meets Due Process requirements), *aff'd in relevant part, vacated in part by CNN III*, 2003 WL 152846 at *3 (holding that "[t]he district court properly exercised *in rem* jurisdiction over the domain name").

Third, an order directing PIR to transfer the domain name registration by altering the information contained in the Registry Database within its control is not an extraterritorial application of the Lanham Act which would be governed by the test in *Steele v. Bulova Watch Co.*, 344 U.S. 280, 285–89, 73 S.Ct. 252, 97 L.Ed. 319 (1952). *See CNN II*, 177 F.Supp.2d at 518 & n. 29 (noting that a transfer order directed at a registry "may have extraterritorial effects or consequences" but noting that such an order does not "specifically address extraterritorial conduct"); *CNN III*, 2003 WL 152846 at *3 (rejecting the registrant's argument on appeal that the *Steele* test should apply "on the reasoning of the district court"). To be sure, the practical effect of the transfer order will be that the foreign registrant is no longer be able to use the <aol.org> domain name to direct traffic toward his web site, whether in the United States, South Korea, or elsewhere. Yet, this is not an "extraterritorial application" of the Lanham Act or the ACPA, because PIR, the ".org" registry, is located in this district, and the transfer order would not "specifically enjoin any activity outside the United States; instead, [the order] would be limited to ordering [the registry] in this [district] to transfer ownership of [the] domain name." *CNN II*, 177 F. Supp 2d. at 518 n. 29. Thus, a transfer order would not enjoin any use of the AOL mark by the registrant in South Korea or elsewhere; indeed, it would not even prevent the infringing registrant from using the AOL mark on some other web site or in connection with its products or services offered in Korea. In other words, an order directing a United States registry to transfer an infringing domain name to the trademark owner only compels a domestic entity to do something within this country; it does not require any foreign entity to do anything outside of this country. So, while extraterritorial consequences may flow from a transfer order, this is no more an illegitimate extraterritorial application of the ACPA or Lanham Act than occurs when court orders vindicating federal rights routinely compel actions solely within this country that have effects outside this country. For example, courts may, pursuant to the Lanham Act, order the *ex parte* seizure of infringing goods bearing counterfeit marks. *See* 15 U.S.C. § 1116(d)(1). Such orders may involve the seizure of goods that were produced by and belong to a foreign entity, but that are located within the United States. *See, e.g., Bear U.S.A., Inc. v. Kim*, 71 F.Supp.2d 237, 244–45 (S.D.N.Y.1999) (describing the issuance of an *ex parte* seizure order directed at counterfeit parkas that were produced by a Chinese company and imported by its United States subsidiary, where the counterfeit parkas were located in a New Jersey warehouse). The seizure of such goods plainly has an extraterritorial effect on the foreign manufacturer, but this is in no sense an illegitimate extraterritorial application of the Lanham Act, for the goods are located, and the seizure is accomplished, wholly within the United States. Likewise here, although a domain name is not a tangible good like a parka, the Registry Database is located and the transfer is accomplished wholly within the United States; thus the transfer order directed at the PIR registry is not an illegitimate extraterritorial application of the Lanham Act.

Also baseless is any claim that such a transfer order is unfair to infringing foreign registrants. Significantly, the foreign registrants in this case, like all registrants, had a choice of top-level domains in which

to register a domain name. By choosing to register a domain name in the popular ".org" top-level domain, these foreign registrants deliberately chose to use a top-level domain controlled by a United States registry. They chose, in effect, to play Internet ball in American cyberspace. Had they wished to avoid an American ACPA suit and transfer order and American jurisdiction altogether, they might have chosen to register the infringing domain name in top-level domains with solely foreign registries and registrars, such as ".kr". By the same token, registrants choosing the ".org" top-level domain must know, or reasonably should have known, that the controlling registry for that domain is a United States entity located in Virginia and that, under the ACPA, a federal court in Virginia would ultimately have jurisdiction over any name registered in the ".org" top-level domain.

In sum, the transfer order requested by plaintiff is clearly an authorized and available remedy under the ACPA. Furthermore, concerns of international comity do not counsel against issuing an order directing PIR to transfer the <aol.org> domain name to plaintiff as a remedy for the infringement of plaintiff's registered trademarks.[7] To conclude otherwise would render the Lanham Act ineffective in an important commercial context, a result at odds with the Act's terms and purpose.

An appropriate order amending the November 15, 2002 Judgment Order has issued.

---

7. Comity concerns might dictate that a foreign registrar be given an initial opportunity to transfer the domain name in response to a court order through the normal registrar-registry procedures before a court directs the registry to transfer the domain name. In this case, however, that avenue has plainly failed, as OnlineNIC and Netpia have declined to comply with the Judgment Order and hence comity requires no further opportunity for action by the recalcitrant registrar.